**RODRICK J. SILAS**
5914 Summer Country Drive
Bakersfield, CA 93313
Tel: (661) 333-8374
Fax: (909) 899-3881
Email: rodsilas@yahoo.com

PLAINTIFF IN PRO SE

**FILED**

JAN 04 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODRICK J. SILAS<br><br>        Plaintiff,<br><br>        v.<br><br>SELECT PORTFOLIO SERVICING, INC.; U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSEE FOR CERTIFICATE HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-AQ1; AND DOES 1-10<br><br>        Defendants. | Case No.:  1: 17 CV  0 0 0 1 2 DAD JLT<br><br>COMPLAINT FOR:<br><br>1. DECLARATORY RELIEF<br>2. RECISSION OF MORTGAGE UNDER OF 15 U.S.C. § 1601, et. seq. ("TILA")<br>3. CANCELLATION OF INSTRUMENTS<br>4. ACCOUNTING<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff RODRICK J. SILAS ("Plaintiff" or "SILAS"), files this Complaint against Defendant SELECT PORTFOLIO SERVICING, INC., hereinafter referred to as SPS, (in its capacity as purported mortgage servicer of Plaintiff's debt obligation) and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSEE FOR CERTIFICATE HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-AQ1, hereinafter referred to as U.S. BANK, (in its capacity as the alleged owner and assignee of Plaintiff's debt obligation) pleads and alleges as follows:

## I.    NATURE OF THE ACTION

This Action is filed defensively and affirmatively under the Federal Truth In Lending Act, hereinafter referred to as TILA, *15 U.S.C. §§ 1601, et seq.* to enforce Plaintiff's rights under TILA, including without limitation, the right to rescind a consumer transaction and to void Defendants' security interest in Plaintiff's Property, by reason of Defendants' violations of TILA and Regulation Z, *12 C.F.R. § 226* ("Reg. Z"). In addition, Plaintiff seeks actual and statutory damages, reasonable attorney's fees, if any, and costs by reason of Defendants' violations of TILA.

Plaintiff SILAS seeks both legal and equitable relief arising out of the residential mortgage refinancing of Plaintiff's residential property located at 5914 Summer Country, Bakersfield, CA 93313 (the "Property") including violations of TILA, misrepresentation,

COMPLAINT

and deceptive and unfair trade practices.

## II.   JURISDICTION AND VENUE

This action seeks rescission and damages under the federal Truth in Lending Act, *15 U.S.C. § 1601 et seq*. Jurisdiction arises because a federal question is involved.

Jurisdiction in this matter exists by virtue of *28 U.S.C. §§ 1334*, *1331*, and *1337*, as well as subject matter jurisdiction under *15 U.S.C. § 1640(e)*. In addition, this Court has jurisdiction to give declaratory relief under *28 U.S.C. §§ 2201, 2202*. *42 U.S.C. § 1983* which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[1]

## III.   SUBJECT REAL PROPERTY AT ISSUE

The Real Property (herein after referred to as "Property"), the subject of any and all claims of any of the Parties hereto, and which is the subject of instant action, and that of which Plaintiff prays for a Decree and/or Order of Declaratory Relief thereto. The "Subject Property" address and legal description is as follows: 5914 Summer Country Dr., Bakersfield, CA 93313. More particularly, the legal description of this property is:

LOT 34 OF TRACT NO. 5701, IN THE CITY OF BAKERSFIELD, COUNTY

OF KERN, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK

41, PAGES 23 AND 24 OF MAPS, IN THE OFFICE OF THE COUNTY

---

[1] The Ninth Circuit instructs that in actions brought under *28 U.S.C. § 2201*, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co*., 316 U.S. 491 (1942). The *Brillhart* factors require the Court to 1) avoid needless determination of state law issues; 2) discourage litigants from filing declaratory actions as a means of forum shopping; and 3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see* also *Schafer v. Citimortgage* No. CV 11-0319, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court in *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

3

RECORDER OF SAID COUNTY.

Assessor's Parcel Number:   499-183-08-00.

## IV.    **IDENTITY OF PARTIES**

Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto Defendant, SELECT PORTFOLIO SERVICING, INC., ("SPS"), is a national mortgage servicing institution licensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this Courts Judicial District.

Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto Defendant, U.S. BANK, is a national banking and lending institution licensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this Courts Judicial District.

Plaintiff is informed and believes and thereon alleges, that in committing certain acts alleged, some or all of the Defendants named were acting as the Agents, Joint Ventures, Partners, Representatives, Subsidiaries, Affiliates, Associates, Successors, Assigns and/or Employees and/or Agents or some or all of the other Defendants, and that some or all of the conduct of such Defendants, as complained of herein, was within the course and scope and agency of such relationship.

Wherever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other

Defendants.

Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

At all relevant times, each Defendant committed the acts, caused or directed to others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendant were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

At all times mentioned in this Complaint, Plaintiff, RODRICK J. SILAS, is an individual consumer and is the owner, both legal and equitable, of the certain Subject Property.

## V.    DATE OF DETERMINATION

Plaintiff herein request that the date of the Judicial determination sought be that of

5

COMPLAINT

the date of the Notice of Rescission mailed to Defendant which is July 6, 2015.

## VI.    ISSUES PRESENTED

TILA, *15 U.S.C. § 1635*, *Reg. Z §226.23* allows for a party to rescind the Note and Deed of Trust by operation of law.  This occurred in this case on July 6, 2015 when Plaintiff sent a Notice to Rescind to Defendant, SPS by U.S. Priority mail, and more than twenty (20) days have elapsed without a declaratory action being filed against Plaintiff by Defendant U.S. BANK or SPS.

Specifically, the undisputed evidence shows that Plaintiff rescinded the Note and Deed of Trust under TILA *15 U.S.C. § 1635* on July 6, 2015, effectively voiding the contract and debt.  Therefore, Defendant has no standing to enforce the Deed of Trust or collect payments under the contract because the contract has been extinguished by operation of law as of July 6, 2015.

The facts are clear and undisputed; the loan that is the subject matter of this case was rescinded and extinguished by operation of law on July 6, 2015.  Since Defendant U.S. BANK failed to challenge the Notice to Rescind within the twenty (20) statutory days mandated under TILA, Defendants, U.S. BANK and SPS, and any other entity, cannot obtain any right or interest to enforce a contract that was made void after July 6, 2015.

### A.    Material Facts Leading to Notice of Rescission

On August 8, 2006, Plaintiff acknowledges that a consumer loan transaction was executed with Argent Mortgage Company, LLC, hereinafter referred to as Argent, for the

COMPLAINT

refinancing of his single family residence.  Plaintiff acknowledges that a Promissory Note

("Note") was executed as part of the Loan transaction.  Additionally, based upon inform-

ation and belief, in connection with the Loan transaction, Argent took a security interest

in the Subject Property in the form of a Deed of Trust recorded with the Kern County

Recorder's Office on August 16, 2006 as Instrument No. 0206201471.  A true and correct

copy of the Deed of Trust is attached hereto as **Exhibit "A"** and incorporated herein by

reference.

Amidst disturbing news surrounding banks and lenders regarding the mortgage

crisis, and all the settlements and lawsuits that involved Defendant U.S. BANK, Plaintiff

decided to inquire and track information regarding the ownership of his debt obligation.

In researching the chain of title recorded against his Property, Plaintiff became

aware that an Assignment of Deed of Trust was recorded against his Property on August

14, 2012.  Attached as **Exhibit "B"** and incorporated herein by reference is a true and

correct copy of the Assignment of Deed of Trust.  When Plaintiff researched the identity

of this alleged transfer, Plaintiff discovered that Defendant U.S. BANK claimed an

interest as Trustee of the Bear Stearns Asset Backed Securities I Trust 2006-AQ1,

hereinafter referred to as the 2006-AQ1 Trust.

Plaintiff, upon information and belief, thereon believes the debt obligation was

never transferred, assigned and/or sold to the 2006-AQ1 Trust.  In order for U.S. BANK

to have an interest or claim in Plaintiff's debt obligation, the Assignment of Deed of

Trust must have been executed on or about November 30, 2006.  The Assignment of

7

COMPLAINT

Deed of Trust by which Defendant bases its interest and/or claim in Plaintiff's Property is executed on July 17, 2012, nearly six years AFTER the 2006-AQ1 Trust had closed. Defendant U.S. BANK is not the true beneficiary of Plaintiff's debt obligation and Plaintiff was not and still has not been informed of the true identity of the entity that owns his debt obligation.

TILA was amended in 2009 to establish a requirement for notifying consumers of the sale or transfer of their mortgage loans. The purchaser or assignee of the loan must provide the required disclosures no later than 30 days after the date on which it acquired the loan and it applies to **any** consumer credit transaction secured by the dwelling of a consumer. Section 131(g), 15 U.S.C. § 1641(g). No notice was given to Plaintiff by Defendant U.S. BANK within the statutory 30 days or any day thereafter.

The Congress intended to provide consumers with information about the identity of the owner of their mortgage loan. Consumers have an extended right to rescind their loan under TILA Section 125, 15 U.S.C. 1635, and assert that right against the purchaser or assignee. *See* TILA Section 131(c), 15 U.S.C. 1641(g). Among other things, the Act seeks to ensure that consumers attempting to exercise this right know the identity of the assignee and how to contact the assignee or its agent for that purpose. *See* 155 Cong. Rec. S5098-99 (daily ed. May 5, 2009).

Consistent with the statute and legislative intent, Section 404(a) of the Act mandates new disclosure requirements to any person or entity that acquires ownership of an existing consumer mortgage loan, whether the acquisition occurs as a result of a

purchase or other transfer or assignment.  In the case at bar, Defendant U.S. BANK failed to make that disclosure.  The amendment to TILA, along with equitable tolling and the "discovery doctrine" gave Plaintiff an extended right to rescind the loan.

As of the date of the filing of this action, Defendant U.S. BANK has not followed the California Uniform Commercial Code in endorsing the subject Promissory Note and perfecting its security interest through valid assignments.  There is no valid evidence of any such documentation in the Kern County records.  Pursuant to TILA, the creditor's interest in the property is "automatically negated regardless of its status and whether or not it was recorded or perfected".  (Official Staff Commentary *§§ 226.15(d)(1)-1, 226.23(d)(1)-1.)*.

Plaintiff mailed to Defendant, SPS, a Notice to Rescind, cancelling the debt obligation on July 6, 2015.  Attached as **Exhibit "C"** and incorporated by reference is a copy of Plaintiff's Notice to Rescind and the U.S.P.S Tracking record evidencing that SPS received the Notice to Rescind on July 8, 2015.  Under §226.23(b), delivering notification to the person or address to which the consumer has been directed to send, payments constitute delivery to the creditor or assignee.  Nothing under the TILA says that notice to a servicer cannot serve as notice to the holder.  In fact, the Office Staff Commentary clearly indicates notice to an agent can suffice as notice to the principal and according to the Consumer Financial Protection Bureau and the Dodd-Frank Act, a Notice to Rescind may be mailed to the mortgage servicer.

**Rescission rights are equally enforceable against original creditors and**

9

COMPLAINT

assignees. *Mattek v. Deutsche Bank Nat. Trust Co.*, 766 F.Supp.2d 899, 902 E.D. Wis. 2011; *Hubbard v. Ameriquest Mortgage Co.,* No. 05 CV 389, 2008 WL 4449888 (N.D. III. Sept. 30, 2008). Both TILA and its implementing regulation only require rescission notification to the "creditor". *15 U.S.C. § 1635(a)*; *12 C.F.R. § 226.23(a)(2)*.

The use of the word "transaction" in the statute provides that rescission is effective to all subsequent assignees upon notice to the "creditor". 15 U.S.C. § 1635(a). The statute states that "[a]ny consumer who has a right to rescind a transaction under *section 1635* of this title may rescind the transaction against any assignee of the obligation." **15 U.S.C. § 1641(c) simply clarifies that assignees may not hide behind an assignment and that as long as the borrower has properly rescinded the transaction by giving notice to the "creditor"…the rescission of the transaction is effective against any assignee.** *Hubbard v. Ameriquest Mortg. Co.*, 624 F. Supp.2d 913 (2008). In the case at bar, Plaintiff notified the assignee directly of his intent to rescind.

Under the TILA, a lender and/or creditor has no right or authority to grant or deny, agree or disagree with a Notice to Rescind. It is effective by operation of law the day it is mailed. Strict construction of Reg. Z would dictate that the voiding be considered absolute and not subject to judicial modification. If Defendant, U.S. BANK, wanted to challenge Plaintiff's Notice to Rescind or his right to rescind, they were required to file a declaratory action against Plaintiff within the statutory twenty (20) day period mandated under TILA. Defendant U.S. BANK failed to do so.

**B.**   **Plaintiff is Entitled to Declaratory Relief and Rescission Based on the Notice to Rescind Pursuant to TILA**

Erroneously, lower Courts have misinterpreted 15 U.S.C § 1635 as requiring the obligor to file a lawsuit to effect rescission. However, the plain language of the statute puts no such requirement on the obligor. That provision "says nothing in terms of an action" or a "suit's commencement"; rather it speaks to the "duration" of the rescission right. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998). The *Supreme Court* found nowhere does 15 U.S.C. § 1635(a) allow for a debate as to disputed or undisputed notices; **simply put the transaction and its contracts are void as a matter of law upon mailing the Notice to Rescind**. *Jesinoski, supra*, at 793. Based on the clarification of the TILA rescission by the *Supreme Court*, Plaintiff's contract became void as of July 6, 2015. Regardless to whether Defendant feels it was not timely, they failed to file a declaratory action against Plaintiff within the statutory and mandatory twenty (20) day period. Regardless to whether the creditor fulfills its legal requirement to return all funds paid on the loan and reflect the termination of the security instrument, the loan no longer exists; the contract is void and any acts by any party based on the loan or contract are illegal.

Reg. Z provides that "to exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). Plaintiff properly mailed the rescission to Defendant SPS as servicer and agent of alleged beneficiary of Plaintiff's debt obligation, Defendant U.S. BANK.

Pursuant to TILA, if a creditor acquiesces (fails to challenge the Notice to Rescind

11

COMPLAINT

by filing a declaratory action against the borrower) at the outset of the Notice to Rescind, "then the transaction [is] rescinded automatically, thereby causing the security interests to become void and triggering the sequence of events laid out in subsections (d)(2) and (d)(3) [of Reg. Z, 12 C.F.R. § 226.23, which implements 15 U.S.C. § 1635(b)]." *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003).

Both Congress and the U.S. Supreme Court agree that there is nothing left for the borrower to do other than dropping a notice to rescind in the mail. It is EFFECTIVE BY OPERATION OF LAW at the point of mailing. The whole point is that a borrower doesn't need to be or have a lawyer in order to cancel the loan contract, the Note and the Deed of Trust with the same force as if a Judge ordered it. **No lawsuit, no proof is required from the borrower. No tender is required as it would be in common law rescission**.

Lender(s) *must* comply within twenty (20) days – return canceled note, satisfy mortgage, and return money to borrower *or* in the alternative Lenders *must* file a lawsuit challenging the rescission within twenty (20) days or their defenses are forever waived. Plaintiff's creditor failed to take that action. Any other interpretation would make the rescission contingent, which is opposite of what TILA and the U.S. Supreme Court say.

Justice Scalia and a unanimous Supreme Court affirmed in *Jesinoski v. Countrywide*, 574 U.S. 2015), the clear import of 15 U.S.C. §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. **The statute makes no distinction between the right to rescind in 3-days or extended as**

12

COMPLAINT

**neither case nor statute give courts equitable discretion to alter TILA's substantive provisions**.

Since Defendant U.S. BANK failed to take possession of Plaintiff's Property within 20 days or failed to file a declaratory action against her within 20 days, the statute and Reg. Z are both explicit that ownership of the money or property vests with the Plaintiff without any further obligation to pay for it. 15 U.S.C. § 1635(b); Reg. Z §§ 226.15(d)(3), 226.23(d)(3). See *Arnold v. W.D.L. Inv., Inc.*, 703 F.2d 848, 851 (5th Cir. 1983).

Since Defendant U.S. BANK's performance is a condition precedent to the Plaintiff's tender obligation, Plaintiff's Step 3 duty to tender is never triggered because Defendant U.S. BANK simply disregarded Plaintiff's rescission notice. *Gil v. Mid-Penn Consumer Discount Co.*, 671 F. Supp. 1021 (E.D. Pa. 1987).

Defendant U.S. BANK's lack of compliance with TILA creates an automatic remedy which arose when they failed to comply with its mandatory obligations under the TILA first. Viewed another way, Defendant U.S. BANK's entitlement to return of the tender amount is conditioned on its own compliance with the statutory mandates. Defendant failed to follow the mandatory requirements under the TILA.

**VII.    PLAINTIFF DOES NOT HAVE TO ALLEGE INJURY OR PREJUDICE**

The purpose of TILA is to promote the "informed use of credit...[and] an awareness of the cost thereof by consumers". *Schroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1380 (11th Cir. 1984).

Congress intended the statute to create a system of private attorneys general to aid its enforcement, thus, to further its remedial purpose, the courts are to liberally construe its language in favor of the consumer. *McGowan v. King, Inc*., 569 F.2d 845, 848 (5th Cir. 1978). Accord *Smith v. Fidelity Consumer Discount Co*. 896, 898 (3rd Cir. 1990). Additionally, creditors must **strictly** comply with TILA's requirements. *Shroder*, 729 F.2d at 1380. Moreover, the consumer may sue for enforcement even if she is not actually deceived or harmed. *Zamarippa v. Cy's Car Sales*, 674 F.2d 877, 879 (11th Cir. 1982).

It is now well-settled that an objective standard is used in determining violations of TILA. It is not necessary that the plaintiff-consumer actually have been deceived in order for there to be a violation. *McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir. 1978). TILA is primarily enforced through lawsuits filed by consumers acting as "private attorneys general." *McGowan v. King, supra,* 569 F.2d at 848-49; *McGowan v. Credit Center of North Jackson, Inc.,* 546 F.2d 73, 77 (5th Cir. 1977); *Sosa v. Fite,* 498 F.2d 114, 121 (5th Cir. 1974); *Thomas v. Myers-Dickson Furniture Company*, 479 F.2d 740, 748 (5th Cir. 1973).

The remedial scheme in the TILA Act is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case. *Williams v. Public Finance Corp.,* 598 F.2d 349, 356 (5th Cir. 1979).

Second, the applicable standard is strict compliance with the technical require-

14

COMPLAINT

ments of the Act. Only adherence to a strict compliance standard will promote the standardization of terms which will permit consumers readily to make meaningful comparisons of available credit alternatives. *15 U.S.C.A. § 1601*; *Pennino v. Morris Kirschman and Co., Inc.,* 526 F.2d 367, 370 (5th Cir. 1976); *Houston v. Atlanta Federal Savings & Loan Association,* 414 F.Supp. 851, 855 (N.D.Ga.1976); *Powers v. Sims & Levin Realtors,* 396 F.Supp. 12, 20 (E.D.Va.1975).

## A.    Doctrine of Equitable Tolling and Discovery Doctrine

It was not until summer of 2015 when Plaintiff continued his efforts in learning the true identity of his debt obligation that he became aware and was able to have an understanding of how his rights were violated. It was at that time that Plaintiff exercised his right to rescind by sending the Notice to Rescind to Defendant SPS.

The doctrine of equitable tolling is derived from **the belief that a statute of limitation should not run against a Plaintiff who is unaware of his cause of action.** *See Mucha v. Dwinski*, 1991 WL 46534 which held:

> The doctrine of equitable tolling is derived from the belief that a statute of limitation should not run against a plaintiff who is unaware of his cause of action. *Cerbone v.Intern. Ladies' Garment Workers' Union*, 768 F.ed 45, 48 (ed Cir. 1985). While originally developed in the context of actions based on fraud, the doctrine has been applied in situations where the defendant has engaged in conduct that concealed from the plaintiff the existence of the action of action. Ibid. Thus, as a "matter of fairness," a court may toll the running of the applicable limitation period where an employee has been "misled by his employer" or where some "extraordinary" circumstance has prevented him from exercising his rights. *Cerbone, supra* at 49; *Miller v. Intern. Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.) cert. denied, 474 U.S. 851, 106 S. Ct. 148, 88 L.Ed.2d 122 (1985); *see also Dillman V. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986).

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.    Burden of Proof and Elements

All Plaintiff is required to show is the loan was rescinded by virtue of a written

notice.  Period.  Plaintiff has done so as evidenced by **Exhibit "C"**.

## C.    No Tender Required

Pursuant to TILA, after Defendant, U.S. BANK, received Plaintiff's Notice to

Rescind, it had two options to take within the statutory twenty (20) day calendar period.

It could have begun the unwinding process by returning the down payment or earnest

money and taking action to "reflect the termination of [the] security interest," pursuant to

15 U.S.C. § 1635(b).  Those actions would, in turn, have triggered Plaintiff's obligation

to tender a payoff of the remaining amount.  *See Lippner v. Deutsche Bank Nat'l Trust*

*Co.*, 544 F. Supp. 2d at 702 ("The issue of whether [the borrower] can satisfy his

rescission obligations [does] not arise until [the lender] ha[s] completed [its] obligations

pursuant to TILA.")  In the alternative, Defendant, U.S. BANK, could have filed a

declaratory lawsuit against Plaintiff to dispute Plaintiff's right to rescind the loan.

Defendant did neither of those things and the time for them to act has expired.   Under

TILA, after the statutory twenty (20) days are completed, the rescission is no longer

subject to attack and its effective upon the date it was mailed.

## D.    As a Matter of Law the Notice of Rescission was Effective

The Notice to Rescind was mailed on July 6, 2015; the creditor/assignee,

Defendant, U.S. BANK, received it on July 8, 2015 and they had twenty (20) days to file

an action in dispute of the Notice to Rescind and chose NOT to do so.  The loan, Deed of

16

Trust, and/or contract is void and must be cancelled as a matter of law effective July 8, 2015.

## VIII.    FAILURE OF DEFENDANTS TO TAKE ACTION

Since Congress intended the rescission process to be self-enforcing, failure to comply with the rescission obligations subjects Defendant U.S. BANK to potential liability.  Non-compliance is a violation of the Act which gives rise to a claim for actual and statutory damages under 15 U.S.C. 1640.  TILA rescission does not only cancel a security interest in the property but it also cancels any liability for the homeowner to pay finance and other charges, including accrued interest.

TILA and Reg. Z states that if creditor disputes the consumer's right to rescind, **it should file a declaratory judgment action within the twenty (20) days after receiving the rescission notice**, before its deadline to return the consumer's money or property and record the termination of its security interest (15 U.S.C. 1635(b)).  Once Defendants received Plaintiffs' notice, the statute and Reg. Z mandate 3 steps to be followed.  Defendant U.S. BANK failed to comply with the steps.

Because Defendant failed to follow TILA's mandated steps, Plaintiff has a right to enforce the rescission (See S. Rep. No. 368, 96th Cong. 2 Sess. 28 at 32 reprinted in 1980 U.S.C.A.N 236, 268 ("The bill also makes explicit that a consumer may institute suit under *section 130* [15 U.S.C., 1640] to enforce the right of rescission and recover costs and attorney fees").

Once the court finds a violation such as not responding to the TILA rescission

17

## COMPLAINT

letter, no matter how technical, it has no discretion with respect to liability (in *re Wright, supra*. at 708; In *re Porter v. Mid-Penn Consumer Discount Co.*, 961 F.2d 1066, 1078 (3d. Cir. 1992); *Smith v. Fidelity Consumer Discount Co., supra*. at 898. Any misgivings creditors may have about the technical nature of the requirements should be addressed to Congress or the Federal Reserve Board, not the courts.

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF
### [Against All Defendants]

1. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

2. Section 2201(a) of Title 28 of the United States Code states:

> In case of actual controversy within its jurisdiction, except with to Federal taxes other than actions of brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an anti-dumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

> Section 2202 of Title 28 of the United States Code states:

> Further necessary or property relief based on declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

3. Plaintiff alleges that Defendant U.S. BANK does not have a secured or

unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and Note which are wholly unsecured.

4. Thus, the competing allegations made by Plaintiff, above, establish that a real and present controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

5. Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that Defendant U.S. BANK, does not have any rights or interest in Plaintiff's Note and Deed of Trust, or the Property which authorized them, in fact or as a matter of law to enforce the terms of the Note and Deed of Trust in any matter whatsoever.

6. Due to actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination that Defendant U.S. BANK claims against Plaintiff's Property are unenforceable, null and void.

## SECOND CAUSE OF ACTION – RESCISSION OF MORTGAGE UNDER 15 U.S.C. § 1601, et. seq. ("TILA")
[Against Defendant U.S. BANK and Doe Defendants]

7. Plaintiff hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

8. The Transaction was subject to Plaintiff's right of rescission as described by 15 U.S.C. §§ 1635, and Reg. Z § 226.15 (12 C.F.R. § 226.15). Defendant U.S. BANK is a an assignee and creditor within the meaning of TILA as implemented by Reg. Z.

19

COMPLAINT

9. Plaintiff rescinded the Transaction by sending a Notice to Rescind to Defendant SPS, as alleged agent for Defendant U.S. BANK, by U.S. Priority Mail on July 6, 2015.

10. Under the Act and Reg. Z, after Defendants received the rescission, TILA process mandates three (3) steps. **Step One**, by operation of law, the security interest automatically becomes void and the consumer is relieved of any obligation to pay any finance or other charge. **Step Two**, Defendant U.S. BANK had twenty (20) calendar days from receipt of the consumer's cancellation notice to return (or credit back) any money or property given to anyone, and to take any action necessary to reflect the termination of the security interest. **Step Three**, **after the creditor** has complied with the preceding mandate, the consumer is to tender back to the creditor any money or property received. 15 U.S.C. § 1635(b); Reg. Z §§ 226.15(d)(1), 226.23(d)(2). No action has been taken by Defendant.

11. More than twenty (20) calendar days have elapsed since Plaintiff's Notice to Rescind was mailed on July 6, 2015. If Defendant U.S. BANK wanted to challenge the Notice to Rescind, they had to file a declaratory judgment action within twenty (20) calendar days after receiving the rescission notice, before its deadline to return the consumer's money or property and record the termination of its security interest. 15 U.S.C. § 1635(b). Defendant U.S. BANK failed to take any action.

12. Since Defendant U.S. BANK failed to comply with the statute within twenty (20) calendar days, they have waived *any and all defenses* and are now in violation of their statutory duties. Thus, they have given up their right to make a claim for the money

20

COMPLAINT

that allegedly was loaned to Plaintiff. The debt is not only unsecured, but it is eradicated starting with the rescission notice and ending with Defendants' failure to comply with the statute within the twenty (20) calendar day period under the TILA.

13. The prong of Step 1, the termination of the security interest by operation of law, has specifically been held immune from courts' equitable modification authority. 15 U.S.C. 1635(b); Reg. Z-226.15(d)(1), 226.23(d)(1). *See Willis v. Friedman*, Clearinghouse No. 54,564 (Md. Ct. Spec. App. May 2, 2002) (Once the right to rescind is exercised, the security interest in borrower's property becomes void ab initio). *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 705-06 (9th Cir. 1986). Strict construction of Reg. Z would indicate that the automatic voiding be considered absolute, and not subject to judicial modification. *Eveland v. Star Bank, N.A.*, 976 F. Supp. 721 (S.D. Ohio 1997). Thus, the security interest is void and of no legal effect irrespective of whether the creditor makes any affirmative response to the note. *See Family Financial Services v. Spencer*, 677A. 2d 479 (Conn.App.1996) (all that is required is notification of the intent to rescind, and the agreement is automatically rescinded). It is clear from the statutory language that the court's modification authority extends only to the procedures specified by *section 1635(b)*. The voiding of the security interest in not a procedure, in the sense of a step to be followed or an action to be taken. It is by operation of law.

14. Defendants have failed and refused to take Step 2 of the Act. Since Plaintiff has legally rescinded the loan transaction, Defendant was to return any money, including that which may have been passed on to a third party and to take any action necessary to

COMPLAINT

reflect the termination of the security interest within 20 calendar days of receiving the notice which has expired, which includes the termination of any security interest created under the Transaction, including termination of the Deed of Trust recorded against Plaintiff's Property, as required by 15 U.S.C. § 1635(b) and Reg. Z § 226.15(d)(2).

15. Defendant U.S. BANK's other task was to take any necessary or appropriate action to reflect the fact the security interest was automatically terminated by the rescission within 20 days of their receipt of the rescission notice (15 U.S.C. § 1635(b); Reg. Z-226.15(d)(2), 226.23(d)(2). Defendant U.S. BANK has failed perform the mandatory act of Step 2 of TILA and are in violation of the Act.

16. Plaintiff seeks an order for declaratory relief to Plaintiff's Property, free from any encumbrance, lien or cloud created as a result of the Transaction.

17. Plaintiff seeks to declaratory relief as of July 6, 2015, the date the Notice to Rescind was mailed out.

18. Defendant violated TILA and Reg. Z by, *inter alia*:

a. failing to provide accurate disclosure of Plaintiff's actual beneficiary;

b. failing to disclose information regarding Plaintiff's debt obligation;

c. failing to follow the mandatory steps required under TILA.

19. There material TILA violations give Plaintiff an extended right to rescind the equitable loan transaction.

20. As a result of Defendant U.S. BANK's failure to provide accurate material disclosure to Plaintiff, Plaintiff is entitled and has exercised her right to

22

COMPLAINT

rescission of the Transaction.

21. The acts and omissions of U.S. BANK as described herein were willful, wanton and in conscious disregard of Plaintiff's rights.

22. Plaintiff is entitled to an injunction against U.S. BANK prohibiting them from enforcing its rights to foreclose on the Property for the violations of law alleged herein.

## THIRD CAUSE OF ACTION – CANCELLATION OF INSTRUMENTS
[Against All Defendants]

23. Plaintiff hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

24. A void or voidable instrument that might cause harm to a party, if left out-standing or in the chain of title, can be removed by remedy of cancellation pursuant to California Civil Code §§ 3412-3414. Plaintiff is entitled to an order cancelling the void documents and compelling delivery of the original documents to Plaintiff.

25. TILA is very clear. Since Defendant U.S. BANK failed to take the mandatory steps required under TILA within twenty (20) days, ownership of the property vests in the Plaintiff without obligation on her part to pay for it. 15 U.S.C. § 1635(b).

26. Here, Plaintiff clearly notified Defendant of his intent to rescind the loan by U.S.P.S. Priority mail. Under the Supreme Court ruling in *Jesinoski*, the homeowner need only notify the lender/creditor of their intent to rescind the loan. The homeowner does not need to file an action to enact the rescission. It is effective upon mailing.

27. Defendant U.S. BANK failed to follow the mandatory steps required under TILA within the statutory twenty (20) day period. Since U.S. BANK failed to comply

COMPLAINT

with the Statute within the statutory timeframe, they have given up their right to make a claim against Plaintiff for the obligation owed.

28. Thus, since the Deed of Trust and the Promissory Note are cancelled by operation of law, Plaintiff is entitled to Cancellation of Instruments of all documents pertaining to the now void and cancelled debt obligation.

29. Plaintiff therefore seeks cancellation of all wrongfully prepared and recorded instruments.

## FOURTH CAUSE OF ACTION – ACCOUNTING
[Against All Defendants]

30. Plaintiff hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

31. Defendant U.S. BANK has held themselves out to be Plaintiff's creditor and beneficiary of Plaintiff's debt obligation. As a result of this purported relationship with Plaintiff, said Defendant has a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.

32. As a result of the aforementioned fraudulent conduct, Plaintiff paid his mortgage payments for years. However, for the reasons stated herein, none of this money was actually owed to Defendant. Due to Defendant's lack of disclosure, Plaintiff exercised his right to rescind.

33. After Defendant received Plaintiff's Notice to Rescind on July 8, 2015, they had twenty (20) calendar days to return (or credit back) any money given to anyone in connection with the loan transaction. Defendant failed to take those mandatory actions.

COMPLAINT

34.  The amount of money due from Defendant U.S. BANK to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiff is informed and believe and thereon on alleges that the amount due to her exceeds $75,000.00.

## RELIEF REQUESTED

Plaintiff re-alleges each of the previous allegations as if set forth fully herein.

**WHEREFORE,** Plaintiff hereby requests Declaratory Relief as per the July 6, 2015 Notice to Rescind as follows:

a. That the Deed of Trust recorded on August 16, 2005, 2006 in the Kern County Recorder's Office as Instrument No. 0206201471 be declared null and void.

b. That all documents recorded on or against title to the subject property in the Kern County Recorder's Office after July 15, 2015 be declared null and void.

c. That a Judicial Declaration be entered, that the title to subject "Property", is vested in Plaintiff alone and that Defendants and each of them be declared to have no interest either Legal or Equitable, right, estate, or lien in subject "Property", and that the Defendants, their Agents or Assigns, be forever enjoined from asserting estate, right, title or interest to subject "Property".

d. For a declaration that the security interest in Plaintiff's Property is void, canceled by operation of law.

e. Award Plaintiff statutory damages for Defendant's failure to comply with TILA including Defendant's failure to properly file a declaratory action against

COMPLAINT

Plaintiff to challenge the Notice to Rescind within the twenty (20) calendar

days allowed under the Act. 15 U.S.C. § 1635(b).

   f.  For reasonable cost of suit incurred in this action and attorney's fees and.

   g.  For such additional and further relief as the Court may deem proper and

      reasonable.

DATED:  December 28, 2016

Respectfully submitted by:


_____
Rodrick J. Silas
Plaintiff


## VERIFICATION

    I, Rodrick J. Silas, an individual, am the Plaintiff in the above-entitled action.  I

have read the foregoing Complaint and know the contents thereof.  The same is true of

my own knowledge, except as to those matters which are therein stated on information

and belief, and as to those matters, I believe it to be true.

    I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

    Executed in Bakersfield, California on December 28, 2016.


_____
Rodrick J. Silas
Plaintiff

26

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

UNITED TITLE COMPANY/L.A.

Recording Requested By:
Argent Mortgage Company, LLC

**James W. Fitch, Assessor—Recorder** RAWSONM
Kern County Official Records                          8/16/2006
Recorded at the request of                              9:31 AM
**Public**

Return To:
Argent Mortgage Company, LLC
C/O Nationwide Title Clearing, Inc
2100 Alt 19 North
Palm Harbor, FL 34683

D O C #:  **0206201471**



| Stat Types: 1 | Pages: **16** |
|---|---|
| Fees | 52.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| **PAID** | **$52.00** |

Prepared By: Argent Mortgage Company, LLC
Chung Be
One City Boulevard West
Orange, CA 92868

10011218-2
409-183-08

————[Space Above This Line For Recording Data]————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **August 7, 2006**
together with all Riders to this document.

**(B) "Borrower"** is RODRICK J. SILAS, A Married Man, As His Sole and Separate Property

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0101041796 - 9501

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01

VMP®-6(CA) (0005)
Page 1 of 15          Initials:

08/07/2006 5:15:26 PM

VMP MORTGAGE FORMS - (800)521-7291

d06-01ca (05/2005)Rev.01

Lender's address is **3 Park Plaza - 10th Floor   Irvine, CA 92614**

Lender is the beneficiary under this Security Instrument.
**(D)** "Trustee" is **Town and Country Title Services, Inc.**

**(E)** "**Note**" means the promissory note signed by Borrower and dated **August 7, 2006**
The Note states that Borrower owes Lender **three hundred ten thousand and 00/100**

Dollars
(U.S. $ **310,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **September 1, 2036**              .
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L)** "**Escrow Items**" means those items that are described in Section 3.
**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

01010 176 - 9501
Initials:

-6(CA) (0005)        Page 2 of 15    08/07/2006 5:15:26    Form 3005  1/01

D06-02CA (05/2005)Rev.01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  County | of | **KERN** | : |

[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]

**EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:**

Parcel ID Number: **499-183-08-00**                              which currently has the address of
**5914 SUMMER COUNTRY DRIVE**                                                          [Street]
**BAKERSFIELD**                                    [City], California **93313**        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0101061798- 9501
Initials

-6(CA) (0005)                    Page 3 of 15  08/07/2006  5:15:26 PM  Form 3005  1/01

(05/2005)Rev.01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0101 9501
Initials:
-6(CA) (0005)        Page 4 of 15     08/07/2006 5:15:26   Form 3005  1/01

D06-04CA (05/2005)Rev.01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

D06-05CA (05/2005)Rev.01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0101071796 - 9501
Initials: _____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

010146 - 9501
Initials:

**-6(CA)** (0005)                    Page 10 of 15     08/07/2006 5:15:26    Form 3005   1/01

D06-10CA (05/2005)Rev.01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

0101047456 - 9501
Initials:

-6(CA) (0005)    Page 13 of 15    08/07/2006 5:15:26    Form 3005  1/01

D06-13CA (05/2005)Rev.01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                    RODRICK J. SILAS              -Borrower


_____                    _____ (Seal)
                                                                                  -Borrower


_____ (Seal)                        _____ (Seal)
                -Borrower                                                         -Borrower


_____ (Seal)                        _____ (Seal)
                -Borrower                                                         -Borrower


_____ (Seal)                        _____ (Seal)
                -Borrower                                                         -Borrower

0101041796 - 9501

 -6(CA) (0005)                  Page 14 of 15  08/07/2006 5:15:26 PM Form 3005  1/01

(05/2005)Rev.01

**State of California**

County of Los Angeles } ss:

On 8 / 8 /06 before me, Zully Sosa
Day/Month/Year                          Notary Public

personally appeared Rodrick J. Silas —

personally known to me (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

Witness my hand and official seal.

_____ (Seal)
Notary Public

ZULLY SOSA
Commission # 1400701
Notary Public - California
Los Angeles County
My Comm. Expires Feb 14, 2007

0101041796 - 9501

08/07/2006 5:15:26 PM

400-15CA (05/2005)Rev.01

ORDER NO  10611218-2

## EXHIBIT "A"

LOT 34 OF TRACT NO. 5701, IN THE CITY OF BAKERSFIELD,
COUNTY OF KERN, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 41, PAGES 23 AND 24 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

[RECORDING REQUESTED BY]
JPMORGAN CHASE BANK, N.A.

[AND WHEN RECORDED MAIL TO]
CHASE
P.O. BOX 8000
MONROE, LA 71203

Loan #: 0017302373

12-32210

James W. Fitch, Assessor-Recorder
Kern County Official Records

JL
8/14/2012
12:12 PM

Recorded Electronically by:
502 LSI Santa Ana

DOC #: 000212111002



000212111002

| Stat Types: 1 | Pages: 1 |
|---|---|
| FEES | 18.00 |
| TAXES | .00 |
| OTHER | .00 |
| PAID | 18.00 |

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, ARGENT MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-AQ1, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, Monroe, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by RODRICK J. SILAS and recorded on 08/16/2006 as Instrument # 0206201471 in Book , Page  in the office of the KERN County Recorder, California. .

Property is commonly known as: 5914 SUMMER COUNTRY DRIVE, BAKERSFIELD, CA 93313.

Dated on  7/17/12  (MM/DD/YYYY)
ARGENT MORTGAGE COMPANY, LLC, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO CHASE HOME FINANCE LLC, SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION, its Attorney-in-Fact

By: _Kenneth Cain_
Kenneth Cain

_____
Vice President

## ACKNOWLEDGEMENT

STATE OF OHIO
COUNTY OF FRANKLIN
The foregoing instrument was acknowledged before me on  07 / 17 / 2012  (MM/DD/YYYY) by Kenneth Cain as Vice President of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO CHASE HOME FINANCE LLC, SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION as Attorney-in-Fact for ARGENT MORTGAGE COMPANY, LLC, who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



Amy T Bartling
Notary Public - State of OHIO
Commission expires: 6/22/2016

AMY T. BARTLING
Notary Public
In and For the State of Ohio
My Commission Expires 06/22/2016

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCFA 15100156 -- EMC    [PREP] FRMCA1

*15100156*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"

July 6, 2015

Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165

**SENT BY UNITED STATES PRIORITY MAIL**
**TRACKING NUMBER: 9405 5036 9930 0093 9986 89**

RE:  RODRICK J. SILAS
        LOAN NUMBER:  0014993471

Property Address:  5914 Summer Country Drive, Bakersfield, CA 93313

To Whom It May Concern:

**I HEREBY EXERCISE MY RIGHT TO RESCIND THE LOAN TRANSACTION IN ITS
ENTIRETY UNDER THE USURY AND GENERAL CLAIMS THEORIES AND
CAUSES OF ACTION.  BY FAILING TO DISCLOSE THE TRUE LENDER AND
USING SUBTERFUGE TO HIDE THE FACT THAT THE "LENDER" AT CLOSING
WAS PAID TO POSE AS THE LENDER WHEN IN FACT AN UNDISCLOSED
UNREGISTERED THIRD PARTY HAD RENTED THE CHARTER OR LENDING
LICENSE OF THE "LENDER," THE LIMITATION ON MY RIGHT TO RESCIND
WAS EXTENDED INDEFINITELY.  UNDER STATE AND FEDERAL LAW, THE
MORTGAGE IS NOW EXTINGUISHED AND YOUR RIGHTS UNDER THE TRUSTEE
DEED, IF ANY, HAVE TERMINATED.**

**PURSUANT TO 12 C.F.R. §226.2(a)(13), "CONSUMMATION" OF THE LOAN
OCCURS WHEN THE BORROWER IS "CONTRACTUALLY OBLIGATED."  THE
POINT AT WHICH A "CONTRACTUAL OBLIGATION…IS CREATED" IS A
MATTER OF STATE LAW.  UNDER CALIFORNIA LAW, CALIFORNIA CODE OF
CIVIL PROCEDURE § 1550, A CONTRACT IS FORMED WHEN THERE ARE (1)
PARTIES CAPABLE OF CONTRACTING, (2) MUTUAL CONSENT, (3) A LAWFUL
OBJECT, AND (4) SUFFICIENT CAUSE OF CONSIDERATION.**

**"THE NINTH CIRCUIT HELD THAT UNDER CALIFORNIA LAW, A LOAN
CONTRACT WAS NOT CONSUMMATED WHEN THE BORROWER SIGNED THE
THE PROMISSORY NOTE AND DEED OF TRUST BECAUSE THE ACTUAL
LENDER WAS NOT KNOWN AT THAT TIME.  UNDER THESE CIRCUMSTANCES,
MY LOAN WAS NOT "CONSUMMATED" AND IS STILL NOT "CONSUMMATED"
BECAUSE THE ACTUAL LENDER, THE TRUE "SOURCE OF FUNDS" FOR MY
LOAN, HAS NOT BEEN IDENTIFIED.  UNTIL THE ACTUAL LENDER IS
IDENTIFIED THERE IS NO LEGALLY ENFORCEABLE CONTRACT."  JACKSON V.
GRANT, 890 F.2d (9th Circuit 1989).**

I hereby rescind the above referenced loan and/or declare it to be null and void and demand
treble damages for the face value of the note.

PLEASE GOVERN YOURSELVES ACCORDINGLY!

Sincerely,

Rodrick J. Silas

Case 1:13-cv-00012-DAD-JLT    Document 1   Filed 01/04/16   Label Record

**Instructions**

1. Each Click-N-Ship® label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

---

**USPS TRACKING # :**

**9405 5036 9930 0093 9986 89**

| Trans. #: | 341111345 | Priority Mail® Postage: | $5.05 |
| Print Date: | 07/03/2015 | Total | $5.05 |
| Ship Date: | 07/06/2015 | | |
| Expected | | | |
| Delivery Date: | 07/08/2015 | | |

**From:**    RODRICK J SILAS
              5914 SUMMER COUNTRY DR
              BAKERSFIELD CA 93313-5140

**To:**    ATTN: CORRESPONDENCE DEPARTMENT
           SELECT PORTFOLIO SERVICING, INC.
           PO BOX 65250
           SALT LAKE CTY UT 84165-0250

* Commercial Base Pricing Priority Mail rates apply. There is no fee for USPS Tracking™ service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

---

**UNITED STATES POSTAL SERVICE** ®   *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking™ page at usps.com*

English       Customer Service ›     USPS Mobile ›     Register / Sign In



# *USPS.COM*

# USPS Tracking®


**Customer Service ›**
Have questions? We're here to help.


**Get Easy Tracking Updates ›**
Sign up for My USPS.

**Tracking Number: 9405503699300093998689**

**On Time**
**Expected Delivery Day: Wednesday, July 8, 2015**

## Product & Tracking Information

### Available Actions

**Postal Product:**
Priority Mail 2-Day™

**Features:**
USPS Tracking™

Up to $50 insurance included
Restrictions Apply

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **July 8, 2015 , 8:10 am** | **Delivered** | **SALT LAKE CITY, UT 84165** |

Your item was delivered at 8:10 am on July 8, 2015 in SALT LAKE CITY, UT 84165.

| | | |
|---|---|---|
| July 8, 2015 , 6:57 am | Available for Pickup | SALT LAKE CITY, UT 84165 |
| July 8, 2015 , 6:40 am | Arrived at Post Office | SALT LAKE CITY, UT 84115 |
| July 8, 2015 , 4:44 am | Departed USPS Facility | SALT LAKE CITY, UT 84199 |
| July 7, 2015 , 9:13 pm | Arrived at USPS Facility | SALT LAKE CITY, UT 84199 |
| July 6, 2015 , 11:11 pm | Departed USPS Facility | CITY OF INDUSTRY, CA 91715 |
| July 6, 2015 , 8:56 pm | Arrived at USPS Origin Facility | CITY OF INDUSTRY, CA 91715 |
| July 6, 2015 , 7:41 pm | Accepted at USPS Origin Sort Facility | BAKERSFIELD, CA 93313 |
| July 6, 2015 | Pre-Shipment Info Sent to USPS | |

## Track Another Package

**Tracking (or receipt) number**

Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

**Sign up for My USPS ›**



**HELPFUL LINKS**

Contact Us
Site Index
FAQs

**ON ABOUT.USPS.COM**

About USPS Home
Newsroom
USPS Service Updates
Forms & Publications
Government Services
Careers

**OTHER USPS SITES**

Business Customer Gateway
Postal Inspectors
Inspector General
Postal Explorer
National Postal Museum
Resources for Developers

**LEGAL INFORMATION**

Privacy Policy
Terms of Use
FOIA
No FEAR Act EEO Data

Copyright © 2015 USPS. All Rights Reserved.

Search or Enter a Tracking Number